1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7
8               FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

10   MARY J. YAKAS, on behalf of herself and          No. C 09-02964 WHA
     all others similarly situated,
11
                    Plaintiff,
12                                                     **ORDER DENYING
     v.                                                DEFENDANT'S MOTION TO
13                                                     DISMISS**
     CHASE MANHATTAN BANK, U.S.A.,
14   N.A., predecessors, successors, and
     subsidiaries, and DOES 1-100, names and
15   addresses currently unknown,
16                  Defendants.
17   ────────────────────────────────/

18                             **INTRODUCTION**
19        In this proposed class action, defendant Chase Manhattan Bank moves to dismiss
20   plaintiff's breach-of-contract and unjust-enrichment claims.  For the reasons stated below, the
21   motion to dismiss is **DENIED**.
22                              **STATEMENT**
23        On July 1, 2009, plaintiff commenced this action.  Defendant moved to dismiss.  That
24   motion was granted with leave to amend.  On November 19, plaintiff filed a first amended
25   complaint alleging breach of contract and unjust enrichment.  Now ripe for decision is a new
26   motion to dismiss.
27        Plaintiff is a resident of Concord, California.  She desires to represent a class of borrowers
28   who entered into home equity lines of credit also known as HELOCs.  Defendant is a national
     retail banking institution with branch offices throughout California and across the United States.

**United States District Court**
For the Northern District of California

In April 2004, plaintiff entered into her HELOC agreement with defendant. Plaintiff's HELOC had a $71,750 credit limit that was secured by her Concord property. In order to obtain this HELOC, defendant required plaintiff to submit an appraisal by a licensed appraiser of her property. The appraisal valued plaintiff's property at $718,000.

Paragraph 14 of the HELOC agreement required plaintiff to pay a non-refundable annual fee. Paragraph 14 stated:

> **14. ANNUAL PARTICIPATION FEE.** You agree to pay us a non-refundable Annual Participation Fee of $20.00 during the Draw Period and any extension of the Draw Period. Unless you terminate your Credit Account and pay the outstanding balance, the Annual Participation Fee will be charged to your Credit Account annually during the Draw Period in the Monthly Statement Period ending in your anniversary month which we assign to your Credit Account.

Oddly, the term Draw Period was *not* defined in the HELOC agreement, and the parties dispute its meaning. Plaintiff says it meant, "any period during which the borrower could draw from the HELOC account." Defendant says it meant the same as Advance Period, which was defined in the HELOC agreement as "a period of 120 Monthly Statement Periods after the date [plaintiff's] Credit Account is opened." Defendant also asserts that the term was defined in defendant's initial loan application disclosure to plaintiff and that that definition was consistent with the definition of Advance Period. The initial disclosure stated, "You can obtain credit advances ("Advances") for 10 years (the "draw period") in all states . . .". Oddly, this document has a place for the customer's initials in the lower right, but none were inserted.

Plaintiff paid the annual fee in April 2004 when she opened her account, and then annually on her anniversary month up to April 2008.

Paragraph 16 of the HELOC agreement allowed defendant to alter plaintiff's credit privileges. Paragraph 16 stated:

> **16. CANCELLATION OF CREDIT PRIVILEGES.** We can refuse to make additional extensions of credit, or reduce your Credit Limit if:
>
> a.) The value of the Property declines significantly below its original appraised value for purposes of this Credit Account.

The HELOC agreement did not define "significantly" or specify how the value of plaintiff's property should be determined for purposes of altering plaintiff's credit privileges.

2

**United States District Court**
For the Northern District of California

1    On December 13, 2008, defendant unilaterally suspended future draws on plaintiff's

2    HELOC, stating that the valuation of plaintiff's property no longer supported her line of credit.

3    Defendant used an Automated Valuation Model ("AVM") to assess the value of plaintiff's

4    property.  How the AVM model worked is a mystery on the present record.  At the time defendant

5    suspended plaintiff's HELOC, the AVM estimated the value of plaintiff's property at $674,000.

6    After the estimate, plaintiff had $24,181 available to draw upon her HELOC.  In April 2009,

7    plaintiff's anniversary month, defendant charged plaintiff the $20 annual fee.[1]

8    In connection with the valuation of plaintiff's property, the parties dispute at least two

9    things.  *First*, the parties dispute how the value of plaintiff's property should have been

10   determined for purposes of altering plaintiff's credit privileges.  Plaintiff alleges that an

11   established "course of dealing" required defendant to obtain an appraisal by a licensed appraiser

12   prior to altering her credit privileges.  Defendant replies that it was not limited to any specific

13   valuation method, let alone an appraisal by a licensed appraiser.  Defendant relies on the Federal

14   Reserve Board's Official Staff Interpretations ("FRB Official Interpretations") to Regulation Z,

15   which implemented the Truth in Lending Act, to argue that an appraisal was not required before

16   suspending plaintiff's credit privileges.

17   *Second*, the parties dispute the reliability of the AVM.  Again, the specifics of the model

18   actually used are completely unknown on the immediate record.  Aside from that, plaintiff alleges

19   that the AVM was unreliable because it did not take into account any improvements made to her

20   property or the unencumbered equity in her property.  Plaintiff also alleges that the AVM was

21   unreliable because in November 2008, a month before her account was suspended, the Office of

22   Assessor for Contra Costa County valued her property at $705,000, which is more than the

23   $674,000 estimated by the AVM.  Plaintiff alleges that the disparity in the valuations — $705,000

24   in November 2008 and $674,000 in December 2008 — shows the AVM was unreliable.

25   Defendant counters that the November 2008 valuation of $705,000 now referenced by plaintiff

26   was actually made as of January 1, 2008 — not November 2008 or even December 2008 when

27

28       [1]Given that plaintiff had a $71,750 credit limit, she must have drawn already $47,569 from her account
in order to have had $24,181 available on her account when it was suspended.

3

**United States District Court**
For the Northern District of California

1   plaintiff's account was suspended.  Furthermore, defendant counters that as of January 1, 2009,

2   plaintiff's property was valued at $615,000 by Contra Costa County.  Defendant argues that the

3   progressive decline in plaintiff's property — $674,000 in December 2008 and $615,000 in

4   January 2009 — renders the AVM reliable.  Defendant alleges that the AVM was reliable because

5   the proposed revision to the FRB Official Interpretations deems the use of an AVM to be an

6   appropriate property valuation method.

7   Paragraph 26 of the HELOC agreement contained a choice-of-law provision.  Paragraph

8   26 stated:

9   **26.    APPLICABLE LAW.**  Except to the extent that federal law shall
    be controlling, your rights, our rights, and the terms of this Agreement shall be
10  governed by Delaware law.

11  The parties agree that Delaware law should be applied to resolve any disputes arising out

12  of the HELOC agreement.

13  **ANALYSIS**

14  A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

15  alleged in the complaint.  *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th. Cir.

16  1995).  All material allegations of the complaint are taken as true and construed in the light most

17  favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th. Cir.

18  1996).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

19  factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

20  requires more than labels and conclusions, and a formulaic recitation of a cause of action's

21  elements will not do.  Factual allegations must be enough to raise a right to relief above the

22  speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted).

23  Although materials outside of the pleadings should not be considered without converting

24  the motion to a motion for summary judgment, a district court may consider all materials

25  submitted as part of the complaint including exhibits and documents to which the complaint

26  specifically refers and whose authenticity is not questioned even if they are not physically

27  appended to the complaint.  A district court may take judicial notice of its own orders and of

28  records in a case before it as well as other matters of public record that are properly subject to

4

United States District Court

For the Northern District of California

1  judicial notice.  *Hal Roach Studios v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th

2  Cir. 1990).

3      This order involves a review of at least some documents essential to the claims,

4  documents specifically referred to in the complaint, and published reports regarding the value of

5  plaintiff's property.  This does not mean that all materials necessary to finally interpret the

6  contract are before the Court.

7      **1.    FIRST CLAIM:  BREACH OF CONTRACT.**

8      Plaintiff's first claim alleges breach of contract.  In order to survive a motion to dismiss

9  for failure to state a breach-of-contract claim, plaintiff must establish the existence of a contract,

10  the breach of an obligation imposed by that contract, and the resultant damage to plaintiff.  *VLIW*

11  *Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

12      Here, plaintiff entered into a HELOC agreement with defendant in April 2004.  Plaintiff

13  alleges that defendant breached the HELOC agreement in three different ways.  *First*, plaintiff

14  alleges that defendant breached the HELOC agreement when it failed to obtain an appraisal by a

15  licensed appraiser prior to suspending her line of credit.  In support of this allegation, plaintiff

16  asserts that defendant was obligated to obtain an appraisal because the parties established a course

17  of dealing.  Plaintiff asserts that a "course of dealing" was established in three different ways:

18  plaintiff was required to obtain an appraisal prior to receiving her HELOC account; Paragraph 10

19  of the HELOC agreement allowed defendant to conduct an appraisal at any time during the life of

20  the HELOC; and plaintiff was required to obtain an appraisal in order to dispute defendant's

21  suspension of her account.  (Actually, this is not a "course of dealing" per se but an interpretation

22  of a term by reference to the remainder of the agreement.)  As a result of defendant's conduct,

23  plaintiff alleges that she was damaged because her property value was assessed incorrectly, which

24  directly led to the suspension of her line of credit.

25      In response to plaintiff's allegation that defendant was required to obtain an appraisal by a

26  licensed appraiser, defendant counters that the HELOC agreement was silent as to how the value

27  of plaintiff's property would be determined for purposes of altering her credit privileges.

28  Defendant replies that it was not limited to any specific valuation method and that using an AVM

was not a breach of the agreement.  Furthermore, defendant references the FRB Official

Interpretations to argue that an appraisal was not required to suspend plaintiff's credit privileges.

The FRB Official Interpretations stated:

> This provision does not require a creditor to obtain an appraisal before suspending
> credit privileges although a significant decline must occur before suspension can
> occur.

12 C.F.R. Part 226, Supp. I, ¶5b(f)(3)(vi) at 6.

Though defendant's arguments are plausible, they do not prove that plaintiff has failed to

state a breach-of-contract claim.  It may well be that a licensed appraiser was not required

(without so holding), but that does not translate to an allowance of an AVM, much less a mystery

AVM whose particulars are totally a secret.

To be sure, Regulation Z placed some constraints on HELOC loans; but otherwise,

Regulation Z left it to the parties and their contracts to regulate their own relationship.  So if the

parties had agreed that an appraisal *was* required that would be enforceable, even though not

required by Regulation Z.  In other words, Regulation Z imposed some minimum requirements,

but the bank in its agreement was free to acquiesce in more limitations.  Whether or not this

particular contract did so is the basic issue that will have to be decided either on summary

judgment or trial after a more full record.  Therefore, Regulation Z in no way disposes of this

claim.

*Second*, plaintiff alleges that defendant breached the HELOC agreement because the

AVM was unreliable.  In support of this allegation, plaintiff asserts that the defendant's AVM

was unreliable because it did not take into account any improvements made to plaintiff's

property, and it did not account for the equity in plaintiff's property.  Plaintiff also asserts that the

AVM was unreliable because in November 2008, her property was valued at $705,000, whereas

the AVM valued her property at $674,000 a month later.  Plaintiff relies on *Wilder v. JPMorgan*

*Chase Bank, N.A.*, No. 09-0834, slip op. at 5 (C.D. Cal. Nov. 25, 2009), to argue that this

decrease in valuation suggests that the AVM was unreliable.  In *Wilder*, the defendant obtained an

AVM valuing the plaintiff's property at $811,800 in April 2009.  The plaintiff, however, obtained

an appraisal from a licensed appraiser valuing the property at $970,000 in June 2009.  The court

declined to dismiss the plaintiff's breach-of-contract claim holding that the difference between the AVM and the full appraisal raised doubts as to the accuracy of the AVM. As a result of the AVM, plaintiff alleges that she was damaged because her property value was assessed incorrectly, which directly led to the suspension of her line of credit.

Defendant replies that the proposed revision to the FRB Official Interpretations states that an AVM is an appropriate property valuation method. The proposed revision to the FRB Official Interpretations states:

> If not prohibited by state law, property valuation methods other than an appraisal that may be appropriate to use under this provision include, but are not limited to, automated valuation models, tax assessment valuations, and broker price opinions. Any property valuation method must, however, consider specific characteristics of the property, such as square footage and number of rooms, and not merely estimate the value based on property values or re-sale prices generally in a particular geographic area.

Proposed Rule, 74 Fed. Reg. 43,595 (Aug. 26, 2009) (to be codified at 12 C.F.R. Part 226). Defendant also argues that plaintiff's reliance on *Wilder* is misplaced because here, plaintiff did not allege that she ever obtained an appraisal valuing her property differently from defendant's AVM. Defendant adds that as of January 1, 2009, plaintiff's property was valued at $615,000 by Contra Costa County, which defendant argues validates the AVM's assessment of $674,000 because both demonstrate a decline in property value.

Though defendant's arguments are plausible, they cannot carry the day at the pleading stage. As a preliminary matter, the proposed revision to the FRB Official Interpretations was written well after the parties entered into the HELOC agreement, and it is hard to see how it could have informed the contractual intent of the parties. Additionally, the proposed revision insists that square footage, number of rooms, and other "specific characteristics" of the property be considered. Did the AVM in question do so? Who knows? On this record, the AVM is a complete secret. Discovery is essential. Consequently, plaintiff has alleged sufficient facts with regards to the unreliability of the AVM to survive a motion to dismiss.

*Third*, plaintiff alleges that defendant breached the HELOC agreement by not pro rating the $20 annual fee after it suspended her credit line and by charging her yet another $20 annual fee after it suspended her credit line. Plaintiff asserts that Paragraph 14 of her HELOC agreement

permitted the bank to charge an annual fee only if she could draw from her HELOC account. Plaintiff asserts that she paid the $20 annual fee in April 2008 so that she could draw on her account from April 2008 to April 2009, but because defendant suspended her account in December 2008, she was prematurely prohibited from drawing from her account.  Adding insult to injury, plaintiff also asserts that defendant charged her another $20 annual fee in April 2009, even though her account remained suspended, *i.e.*, she was forced to pay a fee, but was denied the benefits of the agreement.

Defendant responds that plaintiff misinterprets the term Draw Period.  Defendant asserts that Draw Period meant the same as Advance Period, which was defined in the HELOC Agreement as "a period of 120 Monthly Statement Periods after the date [plaintiff's] Credit Account is opened."  Defendant supports this interpretation by referencing its initial loan application disclosure to plaintiff, which defined Draw Period.  The initial disclosure stated, "You can obtain credit advances ("Advances") for 10 years (the "draw period") in all states . . .".  Using this definition, defendant responds that the annual fee may be charged so long as the HELOC account is open.  As noted, plaintiff's initials do *not* appear where they were supposed to be, so one interpretation is that she never got the form.

Though defendant's arguments are plausible, they do not defeat plaintiff's allegations for the purposes of a motion to dismiss.  Why the agreement even uses the term "Draw Period" with initial caps is a mystery.  It appears to be intended as a defined term.  Defendant says it was a mere drafting error and asks the Court to willy-nilly correct it.  These arguments are better suited for a motion for summary judgment or trial — not a motion to dismiss.  At this point, plaintiff has alleged sufficient facts with regards to the annual fee to make her claim plausible.

*          *          *

In the briefing and at the hearing, there was a considerable side show over the meaning of "significant decline."  Strictly speaking, this was not a basis for the motion to dismiss.  Both sides invoked their favorite passages from the pending *proposed* revision to the FRB Official Interpretations.  While these are interesting arguments, it is again hard to see how a regulation in mere proposed form could be retroactively read into the instant contract years earlier as the intent

**United States District Court**
For the Northern District of California

1  of the parties.  Therefore, this order will place no reliance on the proposed regulation without

2  prejudice to the possibility that aspects of the proposal will have some relevance to expert

3  witnesses and subsequent proceedings.

4         For the reasons stated above, plaintiff has alleged sufficient facts to make her breach-of-

5  contract claim plausible.  Consequently, defendant's motion to dismiss plaintiff's breach-of-

6  contract claim is **DENIED**.

7         **2.     SECOND CLAIM: UNJUST ENRICHMENT**.

8         Plaintiff's second claim alleges unjust enrichment.  In order to survive a motion to dismiss

9  for failure to state an unjust-enrichment claim, plaintiff must establish "(1) an enrichment, (2) an

10 impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of

11 justification and (5) the absence of a remedy provided by law." *Cantor Fitzgerald, L.P. v.*

12 *Cantor,* 724 A.2d 571, 585 (Del. Ch. 1998).  Furthermore, "a claim for unjust enrichment is not

13 available if there is a contract that governs the relationship between parties that gives rise to the

14 unjust enrichment claim." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 891 (Del. Ch. 2009).

15        Plaintiff's allegations establish an unjust-enrichment claim.  Here, plaintiff alleges that

16 defendant was unjustly enriched because it charged her an annual fee the year after it suspended

17 draws from her HELOC.  Defendant was allegedly enriched by the $20 annual fee, and plaintiff

18 was allegedly impoverished because she was charged the $20 annual fee.  There is a relation

19 between the enrichment and the impoverishment because both derive from the $20 annual fee.

20 Furthermore, defendant allegedly lacked justification for charging the annual fee because it

21 suspended draws from plaintiff's HELOC account the pervious year, and there is an absence of a

22 remedy provided by law.

23        Defendant argues that plaintiff should be barred from bringing an unjust-enrichment claim

24 because the conduct that forms the basis of plaintiff's claim — that defendant charged her an

25 annual fee the year even after it suspended draws from her HELOC — falls within the express

26 language of the HELOC agreement.  Paragraphs 14 and 16 of the HELOC agreement directly

27 governed the conduct that plaintiff alleges was unjust.  Paragraph 14 stated that plaintiff must pay

28 an annual fee during the draw period, and Paragraph 16 stated that defendant might alter

1   plaintiff's credit privileges if the value of her property declined significantly below its original

2   appraised value for purposes of her line of credit.

3           Plaintiff replies that she should be permitted to maintain her unjust-enrichment claim if

4   the Court finds Paragraph 16 of the HELOC agreement illusory, too ambiguous to be interpreted

5   or applied, or void.  It is true that if plaintiff loses in her interpretation of the HELOC agreement

6   with respect to the $20 annual fee, then Delaware law would bar her unjust-enrichment claim.  On

7   the other hand, if plaintiff prevails in her interpretation of the HELOC agreement with respect to

8   the $20 annual fee, the question of remedies will arise, and the Court may conceivably find that

9   defendant was unjustly enriched.  At this point, the Court is unwilling to categorically exclude the

10  possibility that unjust enrichment will turn out to be an appropriate remedy.   Consequently,

11  defendant's motion to dismiss plaintiff's unjust-enrichment claim is **DENIED**.

12                                          **CONCLUSION**

13          For the foregoing reasons, defendant's motion to dismiss is **DENIED**.  Priority in discovery

14  shall be promptly given to learning the particulars of the AVM method without prejudice to

15  discovery into other matters.

16

17          **IT IS SO ORDERED.**

18

19  Dated:  January 25, 2010

20                                          WILLIAM ALSUP
                                            UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28